# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 27, 2013

## JAMES PAUL KINARD v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-A-274     Cheryl Blackburn, Judge**

---

**No. M2012-01589-CCA-R3-PC - May 6, 2013**

---

The Petitioner, James Paul Kinard, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his convictions for three counts of rape of a child and one count of aggravated sexual battery and resulting effective sentence of seventy-five years in confinement to be served at 100%. On appeal, the Petitioner contends that he received the ineffective assistance of trial counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, James Paul Kinard.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In January 2008, the Davidson County Grand Jury indicted the Petitioner for six counts of rape of a child, a Class A felony, and one count of aggravated sexual battery, a Class B felony. On direct appeal, this court gave the following factual account of the crimes:

> The defendant was convicted of committing several
> sexual crimes against the four-year-old victim, his wife's niece.

The victim's aunt, Belinda Henley, testified that the defendant was married to her sister, Tonya Kinard. She testified that they helped care for the victim and her siblings. She said that she and her sister alternated taking care of the children because the victim's grandmother was sick.

Ms. Henley testified that in April 2007, the victim did not want to stay with the defendant. She recalled that the child acted like she was terrified to go to the defendant's home. Based on statements the victim made to her, Ms. Henley phoned a Department of Children's Services 1-800 number for child abuse to make a report. She testified that the victim wore panties but also wore "pullups" throughout the day and a lot at night because she was "having a lot of accidents."

During cross-examination, Ms. Henley testified that she maintained contact with the victim. She also said that she had previously caught the victim telling lies. She characterized them as being told to get the victim out of trouble. She said that the victim asked about the defendant and said that she wanted to see and talk to him.

The victim testified that she was six years old and in the first grade in school. Following a series of questions from the trial judge, the witness demonstrated that she understood the truth and agreed to tell the truth. The victim said that she lived with her "papa" and her siblings. When shown a photograph of a female body, the victim indicated places that nobody should touch, including her mouth and her "privates." She was also shown a photograph of a male body and indicated places that nobody should touch, including his mouth and "private." She identified the defendant as a person that had touched her privates. She testified that the defendant touched her privates with his hand and his privates. She also said he touched her mouth with his private and that the defendant put his private inside her mouth. The victim testified that something "yellow" came out of his private and that it tasted "nasty." Finally, she testified that the defendant made her touch his private with her hand. She said that she told the defendant that she did not want to touch him in these ways and that he told her if she told

anybody he would kill her entire family.

The victim testified that the incidents occurred while her aunt was at work. She said that her aunt, the defendant's wife, worked in the office of the hotel where they lived.

Detective David Zoccola testified that he was a thirty-one-year veteran of the police department and that he had ten years of experience in the sexual abuse unit. He said he interviewed the defendant at a hotel on Murfreesboro Road. The defendant's wife was also present when they arrived at the hotel. The interview was conducted in the police car for privacy purposes. He testified that he sat behind the wheel, the defendant sat in the passenger seat, and another detective sat in the backseat. The other detective made an audio recording of the interview. The defendant was not aware that the interview was being recorded. The other detective was with him because he was being trained and had been with the department only six or seven weeks. There was a problem with the recording, which caused them to lose several minutes of the interview.

The detective testified that the defendant was aware of the allegations against him because a family member had brought it to his attention. He said the defendant said there was a family member upset with him because he was not willing to pay an electric bill and prevent the family member's utilities from being shut off. The defendant said the allegations were in retaliation for the electricity being cut off. The detective testified that he brought the victim to court because none of her family members were willing to bring her to court. The defendant acknowledged that he had applied medication to the victim's vaginal and anal areas and said that his wife also had applied medication to those areas.

During cross-examination, the detective testified that he did not attend the victim's forensic interview. He had not spoken to the victim when he interviewed the defendant. The detective said that he told the defendant that the victim had been given a medical examination when, in fact, she had not been examined. He acknowledged that telling the defendant there

-3-

had been an examination was part of a learned technique that medical evidence might exist. The detective was aware that there was no medical evidence at the time. The detective also acknowledged that he set out a "what if" for the defendant involving medical results from the Tennessee Bureau of Investigation (TBI), although nothing was ever sent to the TBI for examination.

Sue Ross, a pediatric nurse practitioner with Our Kids Center in Nashville, testified that she specialized in conducting medical evaluations on children who are alleged to be victims of sexual abuse. She testified that a social worker interviewed the victim and the victim's grandmother and received information consistent with the referral they received from the Department of Children's Services. In July of 2007, she performed a "head-to-toe" examination of the victim, including an anogenital examination which involves a magnification of the area to be observed to see that everything is normal. The victim's examination was normal and indicated no chronic or lasting injury to her genitalia. She testified that it is typical to have normal examinations with children; therefore, the examination does not provide an answer as to whether sexual abuse occurred.

Tonya Kinard, the defendant's wife and aunt of the victim, testified that she had been married to the defendant for seven years. She said that she had little contact with the victim when she was born because there was conflict between the victim's mother and herself. She took a more active role in the victim's life when she reached the ages of three and four, and she saw the victim once or twice a month and on holidays. She and the defendant moved to Nashville in 2006, and they began to share in care giving duties for the victim and her siblings. She testified that she and her husband were both employed at the same hotel on Murfreesboro Road. She said that she was an assistant manager in the office of the hotel but, at the time of the allegations, she worked part-time at the hotel's front desk. The defendant, who was a full-time employee at the hotel, also worked at the front desk.

The defendant's wife testified that they lived in a

standard room at the hotel with a single king bed in it. Her boss lived in a house that was attached to the hotel and located directly behind the hotel office. She testified that the victim and her siblings spent every other weekend with her at the hotel. The children often went to the office with her because her boss had a young son who was a playmate of the children. She said that the victim would not have been left alone with the defendant. She testified that she did not allow the girls to be alone with men because she was raped by her grandfather as a child. She testified that there was never a time when the victim would have been alone with the defendant. She did not have any direct contact with the victim following the defendant's arrest. She acknowledged that she had provided support to the victim's father, who was the custodial parent of the children, to assist in paying bills and providing for the children's needs. The defendant's wife testified that she had not tried to discuss the case with the victim. She said she had caught the victim in a number of lies. During cross-examination, the defendant's wife testified that she trusted her husband with the children because he had given her no reason not to trust him.

The defendant was convicted of three counts of rape of a child and sentenced to twenty-five years on each count, to be served consecutively.[1] He was also convicted of one count of aggravated sexual battery, for which he was sentenced to twelve years. The aggravated sexual battery conviction was ordered to be served concurrently with the rape convictions, for an effective seventy-five-year sentence.

State v. James Paul Kinard, No. M2008-02840-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 427, at **2-9 (Nashville, May 28, 2010), perm. to appeal denied, (Tenn. 2010).

On direct appeal, the Petitioner claimed that the evidence was insufficient to support the convictions because the victim was not reliable, that the trial court abused its discretion in finding that the victim's prior allegations of abuse by other men were inadmissible, and that the trial court improperly sentenced him. See id. at *2. Finding no error, this court affirmed the Petitioner's convictions and sentences. Id.

---

[1]According to the trial transcript, the State announced after its case-in-chief that it was dismissing three of the charges for rape of a child.

Subsequently, the Petitioner filed a timely petition for post-conviction relief, arguing that he received the ineffective assistance of trial counsel. The post-conviction court appointed counsel to represent the Petitioner, and counsel filed an amended petition, arguing that trial counsel was ineffective because counsel failed to consult with the Petitioner, failed to investigate his case and prepare for trial adequately, failed to file appropriate pretrial motions, and failed to ask the victim "a single question on cross examination about who may have touched her inappropriately in the past, or even concerning the incident the Defendant was on trial for. [Counsel] simply asked the victim questions about his house and her house, there was nothing substantive about her abuse at all."

At the evidentiary hearing, the Petitioner testified that he first met counsel shortly after his arrest, which was six to eight months before trial. During that time, counsel met with the Petitioner only twice. At their first meeting, counsel showed the Petitioner the victim's video-recorded forensic interview. They discussed the interview and listened to Detective Zoccola's audio-recorded interview of the Petitioner. The Petitioner said that he told counsel about the victim's sexual abuse allegations against a man named Calvin Brown and that counsel "got the record . . . showing where she accused Calvin of touching her and stuff." However, the Petitioner did not know if counsel investigated the victim's allegations against Brown, and counsel did not subpoena Brown for trial. The Petitioner also told counsel that the victim's aunts, Amanda and Robin Henley, would testify about the victim's being a habitual liar. Counsel told the Petitioner that he would talk with the victim's aunts, but the Petitioner did not think counsel did. The Petitioner said that he knew of only one pretrial motion counsel filed and that the motion "was something . . . to do with my record [in] South Carolina." The Petitioner said that counsel should have had an expert testify at trial about "how someone could lead [children] into telling stories or put accusations in their mind and stuff." Counsel also did not sufficiently cross-examine the victim or discuss the case with the Petitioner. The Petitioner did not know how to prepare himself for trial.

On cross-examination, the Petitioner acknowledged that the victim's video-recorded interview and his audio-recorded interview informed him about the State's case. He said it would have been beneficial for the jury to have heard that the victim accused Brown of abuse but later changed her story. The Petitioner acknowledged that the trial court ruled such evidence was inadmissible. An expert's testimony would have been helpful at trial because the Petitioner thought the victim's mother was trying to get back at him for his and his wife's attempting to obtain custody of the victim. In the victim's video-recorded interview, she said that the appellant made her bleed. Counsel did not question the victim at trial about the bleeding, which would have been significant because no physical evidence supported the claim.

Trial counsel testified for the Petitioner that he was appointed in this case and

remained the Petitioner's attorney until the trial court denied the Petitioner's motion for new trial. Counsel did not know of any experts in Tennessee who could testify about how children could be influenced to make false accusations of sexual abuse. Counsel did not file a pretrial motion based on Tennessee Rule of Evidence 412, the rule that limits evidence of a victim's sexual behavior, because he did not think the Rule applied in this case. Post-conviction counsel asked trial counsel why he did not question the victim "about how and where and why" the Petitioner touched her, and trial counsel answered, "I thought that it was relatively clear from her testimony as to how she said that he had touched her." Counsel also stated, "I did not expect to get an affirmative answer that would have assisted [the Petitioner's] defense from her."

On cross-examination, trial counsel testified that he became licensed to practice law in 1976, worked in the public defender's office, and "[r]outinely" handled child sex abuse cases. According to counsel's notes, he met with the Petitioner eleven times before trial and three times after trial. Counsel said he and the Petitioner also exchanged a couple of letters. Counsel had documentation about the victim's prior allegations of sexual abuse and planned to question Detective Zoccola about the victim's prior allegations against Calvin Brown and another man. However, the trial court ruled that such evidence was inadmissible under Tennessee Rule of Evidence 412. The Petitioner's defense was that it was impossible for him to have committed the crimes because he was never alone with the victim. Therefore, counsel did not think an expert's testimony about influencing a child to make false accusations of sexual abuse had "particular pertinence," and counsel made no attempt to hire an expert. Counsel said he was concerned that if the Petitioner testified at trial, he or the Petitioner would "open the door" to the Petitioner's having a South Carolina conviction for a sexual offense involving a child.

In a written order, the post-conviction court denied the petition for post-conviction relief. Regarding the Petitioner's claim that counsel failed to meet with him or communicate with him adequately, the post-conviction court specifically accredited trial counsel's testimony that he met with the Petitioner eleven times. In any event, the court concluded that even if counsel met with the Petitioner only twice, the Petitioner failed to show that he received the ineffective assistance of counsel because he conceded that he knew of the State's primary evidence against him. Regarding counsel's failure to file pretrial motions, the court noted that it ruled during the Petitioner's trial that evidence about the victim's prior allegations was inadmissible and that this court affirmed the trial court on direct appeal. Regarding counsel's failure to question the victim about bleeding, the post-conviction court noted that the lack of medical evidence was addressed at trial and found that counsel's "method of cross-examining the victim to be part of his trial strategy." Finally, as to counsel's failure to call an expert witness to testify about influencing children to make false accusations of sexual abuse, the court accredited counsel's testimony that he did not consider

such an expert to be pertinent to the case and found that, regardless, the Petitioner failed to have an expert testify at the evidentiary hearing.

## II. Analysis

On appeal, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel met with him only twice before trial, failed to subpoena witnesses, failed to "recruit an expert to offer testimony regarding the victim's potential inclination to make false accusations regarding sexual molestation," and failed to cross-examine the victim adequately. The State argues that the post-conviction court properly denied the petition. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient

to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Regarding the Petitioner's claim that counsel met with him only twice before trial, the post-conviction court specifically accredited counsel's testimony that he met with the Petitioner eleven times. Moreover, the court determined that the Petitioner failed to demonstrate the ineffective assistance of counsel because he acknowledged that he was aware of the State's evidence against him. As to the Petitioner's claim that he received the ineffective assistance of counsel because counsel failed to subpoena witnesses or have an expert testify on his behalf at trial, the Petitioner failed to present those witnesses at the evidentiary hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit the witnesses might have offered to the petitioner's case. Finally, as to the Petitioner's argument that counsel failed to cross-examine the victim adequately, the Petitioner has failed to explain on appeal what questions counsel should have asked the victim. At the evidentiary hearing, the Petitioner testified that counsel should have questioned the victim about her stating during her forensic interview that the Petitioner made her bleed. However, neither party questioned counsel about his failure to cross-examine the victim regarding bleeding. Moreover, the Petitioner has failed to show that informing the jury about the victim's bleeding claim would have helped, let alone changed the outcome of, his case. Therefore, we agree with the post-conviction court that the Petitioner has failed to show that he received the ineffective assistance of trial counsel.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE